```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                          JACKSON DIVISION
```

BRIAN MOORE, STEWART ALEXANDER
AND THE NATURAL LAW PARTY
OF MISSISSIPPI                                            PLAINTIFFS


VS.                              CIVIL ACTION NO. 3:08CV573TSL-JCS


DELBERT HOSEMANN, IN HIS
OFFICIAL CAPACITY AS
MISSISSIPPI SECRETARY OF STATE                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Delbert Hoseman, in his official capacity as Mississippi Secretary of State, to dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the basis that the case is moot and that plaintiffs therefore lack standing to pursue their claims herein. Plaintiffs Brian Moore, Stewart Alexander and the Natural Law Party have responded in opposition to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that defendant's motion is well taken and should be granted.

In order to be included on the ballot as presidential and vice-presidential candidates, Mississippi law requires that candidates file their qualifying documents with the office of the Secretary of State not less than sixty days prior to the day of the general election. Miss. Code Ann. § 23-15-785(2). Thus, for the November 2008 general election, September 5, 2008 was the last day on which candidates could file their documentation with the

Secretary of State.  Plaintiffs attempted to do this, but when they arrived at the Secretary of State's office shortly after 5:00 p.m., the office was closed and the Secretary of State refused to accept their qualifying papers.

Plaintiffs filed this action on September 16, 2008, along with an accompanying motion for temporary restraining order and preliminary injunction, seeking to enjoin defendant to include them on the ballot, contending that defendant's refusal to accept their qualifying papers violated their rights under the United States Constitution.  Specifically, plaintiffs charged that by closing his office at 5:00 p.m. when the statute establishing the qualifying deadline specified only a date by which the papers were to be filed but not a time by which they had to be filed, defendant unconstitutionally usurped the role of the Legislature, in violation of Article II, § 1, cl. 2, under which only the state "Legislature" can prescribe rules for presidential elections.  They further charged that defendant's actions deprived them of a reasonable opportunity to qualify for the ballot and thereby violated their rights under the First and Fourteenth Amendments.

Following a hearing, the court ruled from the bench, and later entered a written opinion and order denying plaintiffs' request for an injunction upon finding that plaintiffs had failed to demonstrate a likelihood of success on the merits of their claims.  The court opined as follows:

First, that the Secretary of State's decision to close his office at the traditional hour of 5:00 p.m. when such a deadline is not explicitly set forth in Section 23-15-785(2), was reasonable and was not inconsistent with the state's election statutes and hence was not a usurpation of the Mississippi Legislature's authority under Art. II, § 1, cl. 2 to direct the manner of appointment for presidential electors;

Second, that defendant's decision to close at 5:00 p.m. did not violate plaintiffs' due process rights because even if the decision was contrary to state law (which this court did not consider that it was), consistent with state law, it was not one of the "rare, but serious, violations of state election laws that undermine the basic fairness and integrity of the democratic system" warranting relief under the Fourteenth Amendment;

Third, that plaintiffs' argument that the Secretary of State was estopped from refusing the qualifying documents because the Secretary's office allegedly stated to Mr. Moore that a late filing would be accepted did not support application of the doctrine of constitutional estoppel; and

Lastly, that once the court had disposed of plaintiffs' constitutional claims, it would not likely retain jurisdiction over plaintiffs' state law-related claims, particularly since the Eleventh Amendment does not allow for any relief, prospective or otherwise, to be granted in federal court solely on the basis of state law violations.

Plaintiffs appealed this court's order, but after the Fifth Circuit denied their motion for a stay pending appeal and preliminary injunction, plaintiffs voluntarily dismissed their appeal. When plaintiffs thereafter served defendant with process, indicating their desire to pursue their claims herein notwithstanding that the election had concluded, defendant filed his motion to dismiss, contending therein that since the 2008 election has already occurred, plaintiffs lack standing and their claims have become moot.

> Article III restricts federal courts to the resolution of cases and controversies. That restriction requires that the party invoking federal jurisdiction have standing–the "personal interest that must exist at the commencement of the litigation." But it is not enough that the requisite interest exist at the outset. "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'"
> ...
> [T]he requirement that a claimant have "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling.

Davis v. Federal Election Com'n, 128 S. Ct. 2759, 2768 (2008) (citations omitted).

> "Mootness" is 'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).' If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents.
> ...
> As a general rule, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." A case should not be

4

> declared moot "[a]s long as the parties maintain a 'concrete interest in the outcome' and effective relief is available to remedy the effect of the violation ...." But a case will become moot where "there are no longer adverse parties with sufficient legal interests to maintain the litigation" or "when the parties lack a legally cognizable interest in the outcome" of the litigation. As the Supreme Court has noted, "it is not enough that a dispute was very much alive when the suit was filed; ... [t]he parties must continue to have a personal stake in the outcome of the lawsuit."

Environmental Conservation Organization v. City of Dallas, 529 F.3d 519, 524-525 (5th Cir. 2008) (citations omitted).

In the case at bar, since the 2008 election is over, plaintiffs are no longer involved in any case or controversy relating to the 2008 election ballot. Accordingly, their claim for injunctive relief is obviously moot since plaintiffs sought only to preliminarily enjoin defendant to certify them for the 2008 ballot and to preliminarily and permanently enjoin defendant "from enforcing *in 2008* any deadline for the qualification of recognized political parties' presidential candidates." (Emphasis added). In sum, the fact that the 2008 elections have been concluded renders moot plaintiffs' claim for injunctive relief.

Plaintiffs have also sought a declaratory judgment declaring defendant's effective imposition of a 5:00 p.m. deadline on the qualifying date established by the state legislature unconstitutional. In the court's opinion, however, there is no longer any controversy between parties having adverse interests of sufficient immediacy and reality to warrant the requested relief.

When considering the potential mootness of a claim for declaratory relief, "[t]he question is 'whether the facts alleged,

5

under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122, 94 S. Ct. 1694, 40 L. Ed. 2d 1 (1974) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)). The court should also consider the related question whether the issues are "capable of repetition, yet evading review," which is one of the recognized exceptions to the mootness doctrine. This exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Federal Election Com'n v. Wisconsin Right To Life, Inc., 127 S. Ct. 2652, 2662 (2007). "The second prong of the 'capable of repetition' exception requires a 'reasonable expectation' or a 'demonstrated probability' that 'the same controversy will recur involving the same complaining party.'" Id. (citation omitted). The Supreme Court has found that "the same controversy sufficiently likely to recur when a party has a reasonable expectation that it 'will again be subjected to the alleged illegality,' ...." Id. at 2663 (2007). See Nautilus Ins. Co. v. Nevco Waterproofing, 202 Fed. Appx. 667, 668-669, 2006 WL 2920596, 1 (5th Cir. 2006) (finding "capable of repetition yet evading review" exception inapplicable because "the

6

possibility that Concierge (defendant) might sue Nevco (plaintiff) in the future is not of 'sufficient immediacy and reality' to warrant a declaratory judgment"). In the court's opinion, there is no "reasonable expectation" or "demonstrated probability" that these plaintiffs, or any prospective Natural Law Party candidates for president and vice-president, will again miss what they now know to be the 5:00 p.m. deadline for filing their qualifying papers.[1] Cf. Presnick v. Bysiewicz, 297 F. Supp. 2d 431, 435 (D. Conn. 2003) (denying exception where "Plaintiff has not adequately demonstrated that he will again run for office, that he will be the only candidate running against an otherwise unopposed incumbent, and that plaintiff will fail to fulfill the petition requirements pursuant to § 9-453d").

The court acknowledges plaintiffs' argument that the Fifth Circuit has held in the context of election law challenges that in considering whether the "reasonable expectation that the same complaining party would be subject to the same action again," the court "does not always focus on whether a particular plaintiff is

---

[1] Plaintiffs argue that the proper inquiry is not whether it can reasonably be expected that they (or anyone else) might miss defendant's 5:00 p.m. deadline, but rather is whether there exists a reasonable expectation that defendant "might again attempt to regulate presidential elections." The court rejects plaintiffs' position for plaintiffs themselves have not contended that defendant has attempted to regulate presidential elections in any way other than by closing his office at 5:00 p.m. on the date of the qualifying deadline established by the legislature. Even if that were the inquiry-which it is not-plaintiffs have offered no basis for any reasonable expectation that the Secretary of State would in the future undertake to usurp the legislative function with respect to the conduct of presidential elections.

7

likely to incur the same injury," and that it is instead enough that "other individuals" in the political process might challenge the law in the future.  See Center for Individual Freedom v. Carmouche, 449 F.3d 655, 662 (5th Cir. 2006) (finding that "even if it were doubtful that the [plaintiff] would again attempt to engage in election related speech in Louisiana, precedent suggests that this case is not moot, because other individuals certainly will be affected by the continuing existence of the [challenged laws]").  However, even if the proper focus were not necessarily limited to whether these particular plaintiffs will be subject to the same action again,[2] in the court's opinion, it does not seem reasonably likely that other prospective presidential/vice-presidential candidates will fail to timely file their qualifying papers before the Secretary of State's office closes at 5:00 p.m. on the date of the qualifying deadline.[3]

For these reasons, it is ordered that defendant's motion to dismiss is granted.

---

[2] In two cases since Center for Individual Freedom v. Carmouche, 449 F.3d 655, 662 (5th Cir. 2006), was decided, the Supreme Court has reiterated that the party seeking to establish the "capable of repetition yet evading review" exception must establish that "there is a reasonable expectation that the same complaining party will be subject to the same action again."  See Federal Election Com 'n v. Wisconsin Right To Life, Inc., 127 S. Ct. 2652, 2663 (2007), and Davis v. Federal Election Com'n, 128 S. Ct. 2759, 2770 (2008).

[3] In this vein, the court notes that plaintiffs' problem arose because they missed the deadline, not because they were unaware of the deadline.  Plaintiffs knew the office closed at 5:00 p.m. and simply failed to get there in time.

SO ORDERED this 10th day of March, 2009.


                                           /s/ Tom S. Lee
                                           UNITED STATES DISTRICT JUDGE